We'll hear the next case, Mfon v. County of Dutchess County. Thanks. Good morning, Your Honors. Brian Isaac, I represent the plaintiff appellant in this matter. Before I start, I just want to kind of get the elephant out of the room with regard to this tort. Clearly, this is a very, very, very unusual tort. Because the gravamen of the tort, as you know, even though it's existed in New York law for many, many years, is that a police officer is being charged with culpability for doing his or her job. That's just not congruent with general New York law on point, which says that if there's a duty and you exercise that duty, you're complying with what you have to do, and not complying with the duty, is in fact negligence. The reason, I think, for this historically, and there were far more cases on this pre-Sarin and then post-Sarin, was that the New York courts have recognized that these kinds of police chase cases, dealing especially in residential areas, are extraordinarily dangerous to innocent third parties, who, of course, have no way of knowing that there's going to be a high-speed chase. I would ask you, just as a matter of course, to look specifically, because we're in the second department, at three second department cases, which we cited in the brief, but which I'm going to refer to. Very, very important cases. Foster against Suffolk County PD at 137 AD 3D 855. Quintana against Wallace, 95 AD 3D 1287. And Ferrara against Village of Chester at 57 AD 3D 719. What's unusual about this case? One, the length of time and the amount of distance that was covered during this chase. You have a nine mile chase covering a distance of ten minutes. Even in the Sarin case, which my adversary properly relies on, you had a situation where the accident was almost immediate with respect to the chase. In fact, if you look on the third page of the decision, your honors will see that at the time that the accident occurred, the officer was calling in the crime. Here, you have a nine mile, ten minute chase. Second, there are a lot of things that may be disputed. Here's one thing that can't be disputed on this record, your honors. There were no pedestrians, right? Well, the answer to the question is that the police officers, Judge Katzmann, said there weren't. When you look at the CCRV video, you see there are some pedestrians. The officers said that there were, I think they used the term four times, almost no vehicles on the road. But they also said that there may have been two vehicles. I would draw the court's attention, however, to the Brill affidavit. Mr. Brill, as you know, was the individual who seated in the car with Mr. Bees, not an envious position to be in. And here's what he said on 476 of the record, and I'm quoting. He was, quote, in fear for his life during the chase. He saw 12 to 20 other vehicles while Bees was, quote, disregarding stop signs and red signal lights and, quote, illegally passing, quote, other vehicles that were on the roadway. The officers said that that conduct just didn't occur. He mentioned pedestrians? He did not mention pedestrians. But in the video, the CCRV video, I think it's at 5.0935, there are, at that general site, pedestrians crossing. The fact is, this isn't a pedestrian collision case, this is a vehicle on vehicle collision case. And I think that one of the things that I gleaned from looking at the Foster case, the Quintana case, and the other Charles case, was that it seems to me that the second department has focused on communication between the police officer who's doing the chase and, I guess, the base as being an important factor. The reason being, very simply, that the officer who's engaged in the chase is obviously focused on apprehending the malefactor. And they need a third party to actually make these decisions, especially under the guidelines. If you look at Pearsall's own testimony, Mr. Pearsall, of course, is the sergeant who was involved in this. He was told, I believe, best case scenario for the defendant, that there was one light that was run. He wasn't told that four or five other red lights were run. He never learned, 284 of the record, why the bastler originally stopped the vehicle. Even though he was responsible for managing the situation. He didn't know, although he knew some of the speeds, he didn't know in some situations that the vehicles had exceeded 60 miles per hour. He certainly never knew that there was a 72 mile per hour ascension, or exceeding of the speed, two or three blocks before. He was never informed, and this is, I think, very important as well, that the driver, two times, went the wrong way in traffic. First, when he slid over, and then he made an illegal U-turn. And once, when he actually went the wrong way on a turnaround, which is an extremely dangerous thing to do. I'm not suggesting to the court, because I'm not insane, that this is a 240 sub one labor law case. It's a hit in the rear case, but it is a summary judgment case. And when you read my adversary's brief, it's beautifully written, beautifully researched. It seems as if it's talking about liability. We don't say we win. All we're saying is that we get to a jury based on the facts disclosed on this record. I see I only have about a minute and a half. Can I just get to the trial court's decision regarding the expert? I think it's a little important. One significant fact, the old Sherlock Holmes story about actions speak louder than words. The defendant never even sought to depose our expert, obviously because their defense in this case was always going to be a qualified immunity defense under 1104E of the vehicle and traffic law. There were some imperfections in the report, but if you look at our cases, and I don't think they were disputed by my adversary, the purpose of rule 26 and FRCP 37 is to prevent surprise. There was no surprise here. With respect to the lack of signature or the failure to set forth all of the publications, that's not really an issue here because they never even deposed the expert. And I would also point out to the court, as we did in our brief, that some of the alleged failures just aren't really there. In other words, you don't have to use the same language. This court and district courts have held that the purpose of a report isn't to supplant testimony. It isn't to substitute for an affidavit. It's just designed to prevent surprise. And if you look- How would the report change the analysis if it had been allowed? Because as I understand it, it basically says, look, the fleeing driver ran a red light, that the driver was drunk, intoxicated. Aren't these the same sorts of factors? 100%, you're smarter than I am. You beat me to my last point, was that my adversary did say that at the end of the day, it doesn't matter. Because even though the court made a preclusion order, when you read the court's decision holistically, the court considered all the factors. I think that's right. So that's why I focus my argument on the substantive rather than the procedural. See, my time is up. I'll let my adversary speak and talk to you in reply. Thank you. Good morning, your honors. David Posner for Dutchess County. This case obviously involves statutory interpretation of 1104 in New York vehicle and traffic law. And most particularly, the foundational New York Court of Appeals decision of Saron and versus Kerr, which my adversary doesn't seem to think really applies, I don't think. I want to just read one sentence from that decision, which is the definition or standard of what is reckless disregard, which is, of course, how Deputy Basler's conduct, driving, is to be determined. And that is, it has to be an act intentionally done of an unreasonable character in disregard of a known or obvious risk that was so great that it was highly probable harm would follow. And done with conscious indifference to the outcome. Now that standard- Does that, I mean, raise a question? Because it's undisputed, isn't it, that the car chase lasted about ten minutes, covered about nine miles. Why isn't the fact that the car chase was protracted at least create a question of recklessness? Because when you look at the context at which the court issued that definition or interpretation of the statute, we find nine factors, nine factual matters decided by the Court of Appeals in Saron, which show that Basler is entitled to summary judgment just as the officer in Saron was. First of all, it happened in the village of Messina, which the court notes was a quote, highly populated area. One of the main points that the plaintiff seeks to make is that this happened in the city of Poughkeepsie. There's no distinction. In many of the cases, the defendant is the city of New York or various large municipalities on Long Island or other upstate cities. That's the first. Second, in Saron, it happened, quote, relatively early, at a relatively early evening hour, 10 PM, when it can be expected that commercial establishments are open, and in fact, the court noted five right in the area were, and that there would be significant traffic on the road. That still didn't disentitle the officer to summary judgment. In our case, it happened at 12.30 in the morning, substantially later, when the officer can reasonably expect, as he testified, because he's a midnight shift deputy, there would be very little traffic on the road. So you have that second factor. The third factor, and my adversary has called this a high speed chase many times here and in their papers. The average speed was 54 miles per hour. Mr. Brill, their affiant, says the average 50 miles per hour. Well, it depends on the road, doesn't it? Yes, it does depend on the road, and it's a 30 mile an hour road in the city of Poughkeepsie. It's a 45 mile an hour road in the town of Poughkeepsie, in the town of LaGrange, where most of the chase or the pursuit took place. In Saarinen, Your Honor. Isn't he at 72 miles an hour? At one point, for about a half a mile, long before the accident, and he slowed to 25 miles an hour after that to make his turn. But my point here is how Saarinen answers all your questions is the court in Saarinen notes that the accident occurred when Mr. Kerr, the bad guy, was going 60 miles an hour in a 30 mile zone inside a village. And the court noted that that is, quote, hardly breakneck speed. The case is relied upon by the plaintiff. The speeds are often 90, even 100 miles an hour. The court of appeals has said going 60 miles an hour in a 30 mile an hour zone is not, in and of itself, any reason to say there was recklessness. The fourth- How would you distinguish your case from, for example, Foster v. Suffolk County Police Department? And that's a case where the court found a question, a fact question on recklessness, where the fleeing driver disobeyed traffic control devices and narrowly avoided crashing into others. Well, first of all, it was what's called a, quote, high speed chase. Although speed is not mentioned in the decision, but based on Saarinen, 54 miles an hour is not a high speed chase. But it was through residential neighborhoods at 11.45 in the morning. Okay, that's a substantial difference between 12.30 at night or 12.30 in the morning. And there's no indication in our case that there were any narrow near misses. The Brill Affidavit simply says that Bessie passed other vehicles. It doesn't say oncoming traffic had to dive out of the way or anything else. It just says he passed other vehicles. That does not create a necessary accident. So the facts of Foster are, in fact, very distinguishable. In Saarinen, I point out that the incident happened, wet roads. Here we have completely dry roads, making it safer for Deputy Basler to do what he did. In Saarinen, and it's noted, it was noted a few minutes ago, the officer delayed calling in. The accident didn't happen the instant the officer noted Mr. Kerr. But the court says it was one or two minutes later, and it was just at the moment of the accident that the officer was first going to call it in. That didn't change the calculus whatsoever. So that factor is out. Perhaps one of the most important ones is that in Saarinen, Mr. Kerr was presumed drunk and in fact was drunk. And the Court of Appeals notes that's the more reason to pursue, to get this, and they use the word, miscreant, off the streets. And in fact, in Campbell, which is the companion case to Saarinen, decided with it, and which Saarinen discusses, and in Campbell it discusses Saarinen. They called Mr. Kerr a manifestly dangerous drunk driver and noted that unanimously they gave the police officer the statutory immunity and summary judgment was granted. I think your honor correctly pointed out that the expert simply says, well this was dangerous because he went through some traffic lights. This was dangerous because I thought he might be drunk. This is, I mean Basler, and this is dangerous because he was speeding. That's the sine qua non of somebody fleeing the police. You don't flee the police in a lawful fashion. You don't stop at traffic lights if you're fleeing the police. It's a crime to flee the police. It's independent crime. You are breaking the law by doing it and you're going to continue to break the law while you're doing it. If it becomes a reason not to do it for the police officer because he's breaking the law, as the district court said, the statute becomes completely toothless. There's nothing a deputy could do except in a rural area, pursue somebody who's traveling the speed limit, who never goes through a stop sign. That makes no sense. The court specifically said that we know the risk will be enhanced if an officer does his duty. But that's a risk worth taking. This is the language of the court. It used the language the officer is duty bound to enforce the law and try to catch the law breaker. And the incidental increased risk is a risk that society, New York's public policy, through its legislature, indicates is worth taking. As far as, I also think we have to look at what Basler did. Because we're looking at his operation of his vehicle. He did not cause this accident. He slowed at every stop sign and red light as he's required to do by his training and by the statute. That is definitional of reasonableness on his part. He did not try to overtake him. He did not try to side swipe him or bump him off the road. He followed him. We're using the convenient language high speed chase, but he wasn't really chasing him. He was following him, hoping that he would come to his senses and stop. If Bessie sped up, he sped up to follow him. If Bessie slowed down, he slowed down. He did not cause an accident with Bessie or, of course, with M Fon. Also, I agree with what you said about New York policy protecting the officer doing his job. But what about Mr. Mufan, who was minding his own business, as far as I could tell. What does New York policy say about the innocent driver on the road who gets catastrophically injured by this? Well, New York policy there is the same as any injured party. They have a tort action against the tortfeasor. Against the truck driver. Against Mr. Bessie. A very easy case is he pled guilty to multiple felonies and he would collect or obtain a judgment and certainly collect through Mr. Bessie's insurance if there was any or his own underinsured coverage. This is a issue in any tort case. If there's no solvent defendant, that doesn't change the policy of New York to allow this avenue of justice for the innocent victim. There are always innocent victims of accidents, whether it's an automobile accident, a labor law accident, slip and fall accident. And there is a well-developed body of tort law in New York which permits that recovery for that innocent victim. But that doesn't mean you transfer that liability to a police officer doing his job trying to catch a criminal. And if Mr. Mufan has no remedy against Basler or the county, doesn't mean he has no remedy against the tortfeasor. The essential argument the plaintiff is making, basically, is speaking through Bessie's mouth, Basler made me do it, because that darn cop just kept trying to catch me. Basler didn't make Bessie do it, Bessie did it. And Basler didn't do anything negligent and certainly nothing reckless, as defined by the Court of Appeals, in doing his job that day. Thank you. Judge Poole, that's why I started off my argument saying exactly what I said. My adversary's problem seems to be with the tort, but the tort is there. And he seems to have a problem with the legislature, because legislature didn't give absolute immunity. There are absolute immunities. Case law is not helpful either. The case law, probably five years ago, when I've done a bunch of these cases, so I've probably lost more than any in the state, was bad five years ago. Rockhead against Trosh, which is referenced as my case, that changed. And if you look, Judge Katzman went through it, but if you look at the trilogy of second department cases where this is, Ferrara, Foster, and Quintana, they mirror these facts almost directly. Now my adversary said to you that this isn't a high speed chase. It is a high speed chase. And let me read to you what he said in his brief, because in his brief he gave the explanation that I want you to adopt. Page six, quoting paragraph one. Prior to the accident, bees passed through stop signs and red lights without coming to a full stop, five in all, or one every two miles. But he never lost control of his vehicle or skidded, as he slowed to no more than 25 miles per hour, and made all turns under control. At two of the lights, right turns on red were permitted, indicating there were long unobstructed sight lines to the left, reducing the hazard of not coming to a full stop before proceeding to make the right turn. My adversary told you, and he's right, that the officer followed him. The reason that this was not a high speed chase in terms of average is because of that conduct. But under the cases, this is a high speed chase. And all I would say again is that this isn't a trial, it's a summary judgment motion. I ask you simply to read those trilogy of cases, compare them to this case, and take note of the fact that in Saarinen, and I did take note of it, and I know about the case, and we did cite it. The Court of Appeals said that the accident occurred, and I'm quoting, okay, 84 New York 2nd at 498. After the vehicle left the parking lot, went onto the street at a time, quote, when McGowan, the officer, reached for his radio. This isn't a nine mile, ten minute speech, it's a secondary speech. It's a matter of seconds. So we would ask you to reverse the grant of summary judgment and reinstate the plaintiff's case. Thanks for listening to me. Thank you both for your arguments. The court will reserve decision.